**NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Plaintiffs,**

v.

**Rogers C. B. MORTON, in his official capacity as Secretary of the Department of the Interior, et al., Defendants.**

**Civ. A. No. 2397–71.**

United States District Court, District of Columbia.

Dec. 17, 1971.

United States, in the sum of $750,000, which is the estimated loss of revenue to the United States for one month ending January 21, 1972, with a provision for increasing the amount to $2,500,000 per month for delay beyond that period.

Rule 65(c) of the Federal Rules of Civil Procedure provides as follows:

"(c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof."

It is well settled that Rule 65(c) gives the Court wide discretion in the matter of requiring security. *See* Urbain v. Knapp Bros. Mfg. Co., 217 F.2d 810, 815–816 (6th Cir. 1954); Doyne v. Saettele, 112 F.2d 155, 162 (8th Cir. 1940). It should be noted that courts have held that security is not necessary where requiring security would have the effect of denying the plaintiffs their right to judicial review of administrative action. Powelton Civic Home Owners' Ass'n v. Department of Housing and Urban Development, 284 F.Supp. 809, 840 (E.D. Pa.1968); Tennessee Public Service Comm'n v. United States, 275 F.Supp. 87, 91 (W.D.Tenn.1967); City of Williamsport v. United States, 273 F.Supp. 899, 904 (M.D.Pa.1967); Florida East Coast Ry. Co. v. United States, 228 F. Supp. 340, 343 (M.D.Fla.1964).

To require the plaintiffs in the case at bar to post security in the amount requested by the Government to cover the alleged losses would have the effect of denying three nonprofit environmental organizations from obtaining judicial review of the defendant's actions under NEPA. Congress has indicated that private environmental organizations should assist in enforcing

Thomas B. Stoel, Jr., Edward L. Strohbehn, Jr., Washington, D. C., for plaintiffs.

Thomas L. McKevitt, Washington, D. C., for the Government.

## OPINION AND ORDER

RICHEY, District Judge.

At the direction of the Court both parties have submitted written memoranda with respect to their positions regarding the Government's request that the plaintiffs post a bond in favor of the

NEPA. Section 101(a) of NEPA states:

"Congress . . . declares that it is the continuing policy of the Federal Government, in cooperation with . . . concerned public and private organizations, to use all practicable means and measures . . . to create and maintain conditions under which man and nature can exist in productive harmony. . . ." 42 U.S.C. § 4331(a) (1970).

The requirement of more than a nominal amount as security would in the Court's opinion stifle the intent of the Act, since these three "concerned private organizations" would be precluded from obtaining judicial review of the defendant's actions.

It should be noted that while the Government might lose income during the time they are restrained from executing the subject leases, the fact is that the Outer Continental Shelf and its environs constitutes one of the Nation's most important resources. For example, adjacent to the proposed lease area is one of the greatest estuarine coastal marsh complexes in the United States, consisting of 7.9 million acres. This complex is vital to fish, shellfish, and wildlife, providing food, nursery habitat, and spawning grounds. In addition it also provides food and shelter for migratory waterfowl. The Court also notes that because of the fortunate combination of warm water temperatures, shallow depths, and rich nutrient systems of estuaries and coastal marshes, the Gulf of Mexico is the most productive fishing region in the United States. For example, in 1970, Louisiana and Mississippi commercial fishermen caught fish and shellfish worth approximately $71 million. The area is also estimated to provide 9 million man-days of sport fishing annually. Finally, the Court recognizes that numerous state and federal recreation areas are located in this region, and that this coastal area is of prime recreational importance to a seven-state region containing 23 million people.

Lastly, the Court has examined other cases involving similar situations, and it notes that only nominal bonds have been required. *See, e. g.*, Environmental Defense Fund v. Corps of Engineers (Tennessee-Tombigbee), 331 F. Supp. 925 (D.D.C.1971) ($1.00); West Virginia Highlands Conservancy v. Island Creek Coal Co., 441 F.2d 232 (4th Cir. 1971) ($100.00); Wilderness Society v. Hickel, 325 F.Supp. 422 (D.D.C. 1970) ($100.00). The purpose of the security given under Rule 65(c) is to cover the costs and damages suffered by the party wrongfully enjoined. 7 Moore ¶ 65.09, at 1656. It would be a mistake to treat a revenue loss to the Government the same as pecuniary damage to a private party. As was pointed out by the United States Court of Appeals for the District of Columbia Circuit in Calvert Cliffs' Coordinating Committee, Inc. v. United States Atomic Energy Commission, 449 F.2d 1109 (D.C.Cir., decided July 23, 1971):

"[T]he Section 102 duties are not inherently flexible. They must be complied with to the fullest extent, unless there is a clear conflict of statutory authority. *Considerations of administrative difficulty, delay or economic cost will not suffice to strip the section of its fundamental importance.*" (Emphasis added.)

The Court believes that the public interest will be far more gravely damaged by failure of the courts to rigorously and consistently enforce NEPA than by any harm which could possibly result from delaying this lease sale long enough to resolve the important legal issues presented by this suit.

By virtue of the foregoing, the Court shall set bond under Fed.R.Civ.P. 65(c) in the amount of $100.00.

So ordered.